# COMPLAINT

U.S. DISTRICT COURT
EASTERN DIST RICT WI
FILED

2016 DEC 19 P 3 25

JON W. SANFILIPPO
CLERK

## (for non-prisoner filers without lawyers)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

REGINALD D. BURKE SR.
W5270A Wisconsin Drive
Elkhorn, WI   53121,
                    Plaintiff,

v.                                                  Case No.    16-C-1681

JON E. LITSCHER, SECRETARY, et al
DEPARTMENT OF CORRECTIONS
3099 E. Washington Avenue
P.O. Box 7925
Madison, WI   53708-7925
                    defendant.

## A.   PARTIES

1.    Plaintiff, Reginald D. Burke Sr. is a citizen of the state Wisconsin and resides at

> W5270A Wisconsin Drive
> Elkhorn, WI 53121

2.   Defendant(s) Jon E. Litscher, Secretary et al, is a person(s) employed by a Wisconsin government agency, the Department of Corrections, and is a citizen of the state of Wisconsin, who's offices are located at

> 3099 East Washington Avenue
> Madison WI 53708-7925,

## B. STATEMENT OF CLAIM

**WHEREAS**, it has been represented to this **Court** by the verified complaint of the plaintiff, **Reginald D Burke Sr.** herein filed, and **that the defendants(s) has caused the plaintiff to be illegally restrained with deliberate indifference to the law contrary to plaintiff's rights under the United States and Wisconsin Constitutional Amendments**. The plaintiff, hereby moves this Honorable Court to review and **remove the unlawful sanctions placed on him** by the defendants **Jon E. Litscher, Secretary** Wisconsin Department of Corrections; **David Melby, 980 Specialist** WI Sex Offender Registry; **Lance Wiersma, Director** WI Sex Offender Registry; **Melissa M. Lohre, Registry Specialist** WI Sex Offender Registry Program; **Grace (Knutson) Roberts, Director** WI Sex Offender Registry Program; **Amy Harper, Specialist** WI Sex Offender Registry Program; **Monica Lukach, GPS Specialist** WI Sex Offender Registry Program; **Denise Symdon, Administrator** Wisconsin Department of Community Corrections; **Penny Vogt, Supervisor** WI Community Corrections; **Teresa Reichmann, Agent** WI Community Corrections, **all employed by the Wisconsin Department of Corrections (DOC),** "1) broke the law, 2) depriving plaintiff of a right secured by the Constitution or laws of the **United States**; 2) and **acted under the color of law**" (See **Buchanan-Moore v. County Of Milwaukee**, 570 F. 3d 824,827,(7th Circuit 2009).

**UNDER WISCONSIN LAW**, administrative agencies have only those powers provided by statute. **NO** statute gives the DOC the authority to **impose any sanctions** for discovery abuse.

**THE WISCONSIN LEGISLATURE,** pursuant to **Wis. Stat. Sec. 301.45**, has directed the **DOC** to place certain sex offences **that were convicted on or after December 25, 1993** on the **Wisconsin Sex Offender Registry**. Enclosed (Exhibit 1a) is an amplified portion of "**WHO IS COVERED**" pursuant to s. 301.45(1g). **This legislative act prescribed specific mandates, legal boundaries of convictions** occurring <u>on or after December 25,1993</u>, a timeframe of who and what convictions can be applied to this **Sex Offender Registry**. The defendants purposely ignored this portion of the law **with a deliberate indifference to the mandates** prescribed under **s. 301.45 (1g)** "**WHO IS COVERED**".

**PURSUANT TO WIS. STAT. SEC. 301.45** all sex offences **occurring** <u>on or after</u> **December 25, 1993,** must register with **SORP (Sex Offender Registry Program)**. These **mandates of registration** also apply to those who were imprisoned on a sex offense and/or on supervision for sex offence at the time the law was enacted. **NO other retroactive conditions or terms of applicability apply.** Plaintiff Burke had **NO** offenses on any sex offender registry at the time this law was enacted.

**ON JANUARY 7, 1997,** plaintiff Burke was convicted in **Walworth County of 3rd degree sexual assault on case no. 96CF226**. Plaintiff's official "**REGISTRATION BEGIN DATE**" is, **January 7, 1997** (See Exhibits 3a, 3b, 3d). It was **this conviction** that required plaintiff Burke to register for **the first and only time** pursuant to **Wis. Stat. Sec. 301.45**. **No other sex offence**

<u>conviction ever appeared on the registry prior to January 7, 1997</u> on plaintiff Burke.

**AFTER SEVERAL LETTERS** (Exhibits **8a, 8d, 8f, 8h, 8j, 8l, 8m, 8n, 8o**) dating as far back as 2007, bringing to the attention of **the Secretary of the Department of Corrections** at that time, that I, **Reginald Burke, had only one sex offence on the registry**. Defendants, however, **with a showing of criminal intent** and a **deliberate indifference contrary to the mandates of law and its boundaries, <u>falsified</u> the record on the sex offender registry, to justify placing this arbitrary and capricious restrictive sanction on plaintiff**. In other words, instead of correcting the bogus error, if it were an "error" of misinterpretation of law before **plaintiff brought it to defendant's** attention that he had **only one** offense on the sex offender registry noted against him, the **96CF226 case,** defendant(s) did what is called an **"end run" around the law attempting to accomplish what could not be done by direct means (See State v. Bembenek).** It's Very Important to note how <u>defendants placed case no J-5184 on the registry</u> <u>"without a conviction date"</u>, Why (See **Exhibit 3a**)? This was and continues to be defendants "end run around the law", violating plaintiff's Constitutional Rights. <u>A conviction date is required by the guidelines of Wis. Stat. Sec. 301.45 (1g) "WHO IS COVERED"</u> (Exhibit 1a). Let it also be noted Exhibits **3c** and **3e** have even a different conviction date of **January 1, 1000,** over a thousand years ago?

It's even more <u>important to note on all these Exhibits plaintiff's "REGISTRATION</u> <u>BEGIN DATE" is noted specifically and undeniably as "01/07/1997"</u>. So, the question must be asked, **"How does case no. J-5184 fit in the mandate of time boundaries required by s. 301.45 "WHO IS COVERED"? "WHO IS COVERED" mandates "on or after December 25, 1993". With a sentencing date of September 21, 1979** (See Exhibit **4a, 4b, 4c, 4d**), how does that date fit into December 25, 1993? This **illegal yet confusing act(s),** <u>with differing conviction dates</u>, defendants exercised illegally **over fourteen years later,** broke the law by <u>falsifying</u> a governmental legal document of public record against plaintiff, contrary to the Wisconsin Sex Offender Registry mandates. This clearly shows a deliberate indifference to dates the law required (See Exhibit 1a). This Constitutional violation** places plaintiff in a category of **liberty restraints, contrary to both the United States and Wisconsin Constitutions** ... starting with **David Melby,** then **980** Specialist Sex Offender Registry Program.

**DAVID MELBY, 980 SPECIALISTS,** Sex Offender Registry Program, **in his individual and official capacity, <u>illegally changed</u>** the status of plaintiff's post-conviction of September 21, 1979. He, **David Melby,** a self-appointed quasi- DOC authority, took it upon himself to take **plaintiff's non-violent conviction** (Exhibit **2a**) and <u>made it into a violent conviction</u> (See Exhibit **5A**). As seen in **defendant Melby's** letter (Exhibit **6a**) addressed to plaintiff dated November 13, 2008, **defendant Melby admits** plaintiff "previously <u>was not</u> incarcerated for a Chapter 980 applicable offense". However, **defendant Melby** also **admits** he along with other **DOC** employees, **how they "<u>changed plaintiff's plea agreement contract sentence because the laws changed"</u>. Doing so violated plaintiff's constitutional protection against double jeopardy. In <u>State v. Willett</u>,** the Court of Appeals of Wisconsin made it clear "<u>that a convicted individual has an expectation of finality in sentencing</u>". By <u>changing plaintiff's sentence illegally</u>, with a **deliberate indifference to plaintiff's rights, it placed plaintiff in a different and higher category of restraint in the sex offender registry status, one with a much more burdensome** punishment. **Plea agreements** are matters of criminal jurisprudence, and because a plea bargain is analogous to a contract, we look to contract law principles to determine

a criminal defendant's rights there under (See **State v. Windom**, 169 Wis. 2d 341, 348, 485 N.W. 2d 832, 835 (Ct. App. 1992). "It is a fundamental precept of contract law that when performance of duty under contract is due, **any nonperformance is a breach**, and **an aggravated party may sue for specific performance**" (See **Edin v. Soderstrom**, 83 Wis. 2d 58, 70, 264 N.W. 2d 275, 281 (1978)).

As stated in **Bergmann v. McCaughtry**, 211 Wis. 2d 1; 564 N.W. 2d 712 (1997). "When **the Department** does not notify an inmate of the proceedings against him or her, **in violation of the Department's own regulations**, then **those proceedings must be invalidated for failure to provide a fundamental procedural right**." From the DOC Website, we have the "WISCONSIN DEPARTMENT OF CORRECTIONS, SEX OFFENDER SPECIAL BULLETIN NOTIFICATION; WHAT CASES REQUIRE OR WARRANT A SPECIAL BULLETIN?" (Exhibit **16a, 16b**). It states "**The law mandates** that **an SBN shall be** provided to law enforcement **under the following cases**: 2. **All cases** where the offender has been convicted of a sex offense, **as defined by crimes requiring registration**, on two or more separate occasions (2-Strike Cases)". CASES **REQUIRING** REGISTRATION! Again, **plaintiff was never required to register for the 1979 conviction of case no. J-5184 because it was not law until 1993**. Defendants, however, placed **case no. J-5184** on the registry not only unknowingly to plaintiff but illegally as well. Thus, as stated in **Bergmann v. McCaughtry**, plaintiff was never notified of these proceedings taking place against him, therefore **those proceedings must be invalidated**. (See Exhibit **6a, 8i**).

**Plaintiff was cleared from the beginning of his sentence of 1997** (Exhibit **12a** dated November 11, 1999) **because his charges did not fall up under "Chapter 980"** (Exhibit **5a**) or **Wis. Sta. Sec. 302.11, "Presumptuous Mandatory Release"** (Exhibit **5b**). Exhibit **12a** "SEX OFFENDER INQUIRY" states "STATUS DATE: 11 03 99... REASON: ECRB NO. COMMENTS: ECRB DISPOSITION: NOT MEET 980 CRITERIA, WILL NOT PURSUE". It makes one wonder "does **DCC, Department of Community Corrections** have a different administrative code than its senior agency, **DOC Department of Corrections**?" Exhibit **12b, DOC** prison "RECORDS OFFICE RELEASE INFORMATION" **clears plaintiff** from any restrictions deriving from an SBN **Wis. Stat. Sec. 301.46 (2m) (am)**. Yet, 35 days later, plaintiff's release, a different code takes effect. "?". If a Court of law couldn't change an individual's sentence, as defined in **State v. Willett**, what right or authority does an individual or an agency must do so? The **Fifth Amendment** to **the United States Constitution** is part of **the Bill of Rights** and protects a person from... **being tried only once** for the same offense, and **not a second time** by members of an agency. **Both the Wisconsin and United States Constitutions contain these double jeopardy clauses**.

Plaintiff, also was **cleared** by the **Wisconsin End of Confinement Review Board,** known as **ECRB**, a process violent offenders must go through coming upon release (See Exhibit **12a, 12b**). This **ECRB clearance** determined if possible procedures were necessary for future commitment were warranted. **Plaintiff did not meet those requirements prescribed as violent pursuant to Wisconsin Chapter 980** (Exhibit **5a, 12a, 12b**). Therefore, **plaintiff was cleared**. Please take notice of how Exhibit **12b, RECORDS OFFICE RELEASE INFORMATION dated July 9, 2012**, says "SBN, Not Needed" and "980 Status, No". However, **35 days later, August 14, 2012**, unbeknown to plaintiff, **that clearance was changed** (See Exhibit **12c**). **Defendants, with a deliberate indifference** to the requirements **mandated in Exhibits 5a and 5b changed this ECRB clearance, making a non-violent crime into a violent crime**. This is clearly a violation of plaintiff rights, even in denying plaintiff a fair due process hearing on these changes.

**LANCE WIERSMA, DIRECTOR** Sex Offender Registry Program, **in his individual and official capacity**, continued in the **Constitutional violations** of plaintiff's rights. In response to a complaint letter from plaintiff addressed to the then Secretary of the DOC, Gary R. Hamblin (Exhibit **8d**), concerning plaintiff's rights being violated, defendant **Wiersma** intervened, addressing plaintiff's complaint. In **defendant Wiersma's** response, a letter dated **September 19, 2011** (Exhibit **8e**), showing **his deliberate indifference** to the mandates of law concerning application of <u>what sex offenses to be applied to the registry</u>. Plaintiff again wrote **defendant Wiersma** (Exhibit **8f**) **explaining in detail plaintiff has only one sex offense on the registry.** **Defendant Wiersma** refused to acknowledge these points of law (Exhibit **8g**).

It has been well established in <u>**State ex rel. Kaminski v. Schwartz**</u> and <u>**State v. Bollig**</u> where **the high Court of Wisconsin** said **"Wis. Stat. Sec. 301.46 (1997-98) grants access to the sex offender registration information "<u>provided</u>" under Wis. Stat. Sec. 301.45."** The Court said **this has been clear since 1997-98,** <u>**Wis. Stat. Sec. s. 301.46 falls under the guidelines set forth in s. 301.45**</u>, the <u>**time boundary limitations of cases only to be applied, "cases on or after December 25, 1993"**</u>. In these rulings, <u>**the Courts said those stipulations in s. 301.45 apply to s. 301.46**</u>. **Wis. Stat. Sec. 301.45(1g)** gives **"<u>A START DATE</u>",** <u>contrary</u> to what defendant **Wiersma** and **Melissa M. Lohre** "made law" in their letters (See Exhibits **8b, 8c** and **8e**) of interpretation of the statute having **"No Start Date"**. This was and still is clearly **a self-imposed deliberate indifference** to what the law prescribes in **Kaminski** and **Bollig**. In <u>**Sample v. Diecks**</u>, this **Honorable Court** set "When an official authorizes constitutionally inadequate procedures, the official's liability is not negated by a showing that he or she did not intend to deprive the plaintiff of due process of law".

**GRACE KNUTSON, DIRECTOR** Sex Offender Registry Program, **in her individual and official capacity**, deliberately refused to acknowledge plaintiff's rights, denying him not only a due process hearing, but refused to look further into the violations her subordinates, **Amy Harper** and **Monica Lukach** were disseminating (Exhibit **8i**). Purposely ignoring plaintiff's Constitutional Rights with a **deliberate indifference** to the mandates required, **Knutson blatantly violated plaintiff's guaranteed Fourteenth Amendment right**, to "life", and "liberty". **Director Knutson** was contacted by plaintiff via U.S. mail on **June 15, 2014** (Exhibit **8j**). An immediate response was returned, however, not from **Knutson,** but from **"some attorney"** who does not identify themselves as **a DOC legal representative** (See Exhibit **8k**). This "attorney" however does agree "a court" has to decide this particular question; **"can a prior conviction, one that has been discharged and satisfied seven years' prior, be subject to new laws without violating the rules of rights set forth in both the Wisconsin and United States Ex Post Facto Clauses?"** In view of the **laws and mandates** set forth in **both the United States and Wisconsin Constitutions** with a **strong emphasis on due process**, plaintiff's rights must be upheld in this **Court's** holdings.

**AMY HARPER, SPECIALIST, in her individual and official capacity**, along with **GPS Specialist, Monica Lukach in her individual and official capacity**, violated plaintiff's Constitutional Rights by re-enforcing (**"re-screen"**) the constitutional violations specifically in ex post facto mandates (See Exhibit **8i**). In this Exhibit, **Specialist Harper** supports **Specialist Lukach's** "opinion". **Specialist Lukach** "opinion" determined that **"<u>because of your two dif-</u>**

ferent registerable offenses, the first being the Milwaukee County conviction.." Again, the 1979 Milwaukee County conviction, case no. J-5184 IS NOT A REGISTERABLE CONVICTION, nor was it annexed to the requirements of law pursuant to 2005 Wisconsin Act 431 and 2007 Wisconsin Act 20, which went into effect January 1, 2008. To do so, add an outdated case, J-5184, with an illegal "end run", to justify an unfavorable "re-screen", placing plaintiff in a category of a qualified Special Bulletin Notification (SBN) is indeed a violation of plaintiff's Constitutional Rights.

Defendant Harper explains and describes the offenses that makes for a Special Bulletin Notification, "Anyone released from prison on or after January 1, 2008 who have been convicted of two or more registerable offenses (2 strike SBN case) as a notification to law enforcement is done under 301.46 (2m) (am) is "automatically required to be on Lifetime GPS per 301.48(2)(a)(7)" (Exhibit 8i). Enclosed Exhibits 11a, 11b, 11c are official copies of plaintiff's "satisfactory discharge" from case no. 96CF226. These official Wisconsin Department of Correction documents denote an official discharge date of October 14, 2003. In further support of these documents, Offender Records Supervisor, W. Stuessy of the Oakhill Correctional Institution verified October 14, 2003 as plaintiff's official discharge date (Exhibit 11e) as well as plaintiff's past DCC agent Doug Geske confirming that upcoming discharge in his CHRONILOGICAL LOG dated September 18, 2003 (Exhibit 11d). Specialist Harper asserts Acts 431 and Acts 20 went into effect January 1, 2008.That law was enacted just over 4 years after plaintiff's discharge date of October 14, 2003 on case no. 96CF226.

DENISE SYMDON, ADMINISTRATOR Wisconsin Department of Community Corrections (DCC) quashed plaintiff's appeal to her (Exhibit 15b) concerning pertinent issues relevant to this matter. Defendant Symdon reverted to "DOC POLICIES" (Exhibit 15c), instead of plaintiff's rights within those policies covered by the Wisconsin and United States Constitutions. Defendant Symdon deemed Administrative Law Judge Thomas H. Bround's "FINDINGS OF FACT, CONCLUSION OF LAW, DECISION", and DOC Psychiatrist, doctors, trained in this field, prognosis of "Mr. Burke to be considered LOW RISK TO REOFFEND" as "not relevant". If not relevant, then what is the purpose for appointing these Law Judges or having these treatment programs? Is that to say relevant rulings and findings must fall within DOC or DCC policies and are only purposeful if they benefit and support what that DOC or DCC feels at that time?

Now, plaintiff would like to point out how like Defendant Harper, neither of the other defendants allowed themselves the openness to stop and consider the many written and vocal complaints given them surrounding the Constitutional rights that were being violated. Defendants deliberate indifference to the many complaints concerning plaintiff's rights, makes them both all defenseless in qualified immunity in both their individual and official capacity. Copies of some of the many complaints in letters sent to the defendants (See Exhibit 8a, 8d, 8f, 8h, 8j, 8l, 8m, 8n, 8o) and their response are included in this complaint to show the deliberate indifference (Exhibits 8b, 8c, 8e, 8g, 8i, 8k) they have towards plaintiff's Constitutional rights.

PENNY VOGT, SUPERVISOR Community Corrections in her individual and official capacity, along with Teresa Reichmann, Agent Community Corrections in her individual and official capacity denied plaintiff a due process hearing concerning the strict restrictive sanctions placed on him due to him illegally being in an SBN status. The supervision plaintiff was placed under was so intrusive as an SBN, it gave no room for any success on parole supervision.

At the time these restraints were enforced, **September 11, 2012** (Exhibit **14a**), and re-enforced **January 2, 2014** (Exhibit **14b**), **plaintiff was on supervision for case no. 09CF347, a non - violent forgery / uttering conviction** (Exhibit **13a**). Plaintiff brought this to the attention of **Agent Reichmann** in an official "**Offender Request for Administrative Review**" **stating specifically why such intrusive restraints should not be on him** (See Exhibit **14d**). Plaintiff **pointed out specifically** how doctor **Robert E. Wheeler, PhD** and doctor **Gary Ankarlo, PhD,** employed by the DOC, **prognosis** that "**Mr. Burke to be considered "LOW RISK TO REOFFEND**" (Exhibit **14e**). Let it be noted that plaintiff informed **each defendant** in this claim of this **official "Sex Offender Report"** by sending them **each** a copy of it. Plaintiff also pointed out to **all defendants,** including **defendant Reichmann, Administrative Law Judge Thomas H. Bround, Division of Hearings and Appeals, "FINDINGS OF FACT, CONCLUSIONS OF LAW, DECISION"** (Exhibit **14f**). Here, **Judge Bround** said "He (plaintiff) **is on supervision for forgery-uttering. He committed the sex offense that put him on sex offender rules in 1996. That case is discharged. He has had no sex offense since then. His Sex Offender Report indicates that he made sufficient progress in treatment and should be considered a low risk to reoffend. He does not seem to be a risk to the community".** This ruling foiled **agent Reichmann's** attempt to revoke (re-incarcerate) plaintiff much longer than nine months (See Exhibit **14f**). Rebelliously, **agent Reichmann** showed a complete **deliberate indifference** towards these **vital rulings** supported by law. Not only did **Agent Reichmann** ignore these **rulings, agent Reichmann** also ignored plaintiff's ongoing complaints of how his **Fourteenth Amendment of "life and Liberty", were being violated.** This prompted plaintiff to **appeal.** After appealing **agent Reichmann's** apathy to **defendant Supervisor Vogt,** she too decided to continue **with a deliberate indifference ignoring plaintiff's official "Sex Offender Report"** and **Judge Bround rulings, along with his Fourteenth Amendment Constitutional Rights.** **The Fourteenth Amendment of the United States Constitution** provides **"nor shall any State deprive any person of life, liberty, or property, without due process of law.** This (Exhibit **15a**) **is clearly a violation of plaintiff's due process rights.** In plaintiff's "**REQUEST FOR ADMINISTRATIVE REVIEW**", plaintiff sought an audience with probation and parole officials, **as in a due process hearing. As Constitutional Rights** issues were brought up in plaintiff's complaint (Exhibit **14d**), **defendants Vogt and Reichmann, "untrained attorneys"**, should have **addressed the issue with a hearing, seeking professional legal advice.** Nevertheless, **defendants Reichmann** and **Vogt continued to violate plaintiff's rights,** denying plaintiff **a due process hearing** as he requested.

    **JON E LITSCHER, SECRETARY** Department of Corrections, **in his individual and official capacity,** following in the footsteps of past Secretary's **deliberate indifferences,** even after it being brought to that secretary's attention the wrong that is being done to plaintiff, **defendant Litscher** continued in refusing to correct the injustice of violations placed on plaintiff's **Constitutional rights. Secretary Litscher participated and supported DOC subordinates to continue in violating Constitutional laws. Defendant's** took a discharge case, J-5184, "**making it more burdensome**", one outside of the **time frame boundaries prescribed by Wis. Stat. Sec. 301.45** of what cases apply. Defendant's then **used it to restrain plaintiff's Fourteenth Amendment Rights of "liberty".** With these **direct violations to plaintiff's rights,** continuing to promote **restrictive sanctions of cruel and unusual punishing restraints** (See Exhibit **6a**), it clearly flies in the face of the **Ex Post Facto Clauses.**

THE UNITED STATES SUPREME COURT in <u>Collins v. Youngblood</u> set forth the history of the decisions in interpreting **the Ex Post Facto Clause**. The Court cited <u>Calder v. Bull</u>, as seminal decision explicating the variety of ex post facto laws prohibited. <u>Collins,</u> a category in ex post facto laws in <u>Calder</u>, is summarized as follows:

> **"It is well settled by decision of this Court so well known that their citation may be dispensed with, that the statute... which makes more burdensome the punishment for a crime after its commission is prohibited."**

**BLACKS LAW DICTIONARY** defines **"an ex post facto violation law passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequence or relations of such fact or deed"**. It is clear, **applying J-5184, with a discharge date of April 15, 1987** (Exhibit **7a**), **to the sex offender registry knowing it does not fall within the legal timeframe boundaries of s. 301.45 (1g) "WHO IS COVERED", strictly cases "on or after December 25, 1993" is in fact a blatant violation of plaintiff's Constitutional Rights**.

**"THE CONSTITUTION FORBIDS** the application of **any new duties to a crime (Case No. J-5184) already consummated** (Exhibit **7a**), nor does it allow **application of a new provision to consummated cases to the detriment or disadvantage of the wrong doer"**. See <u>Lindsey v. Washington</u>, and <u>United States v. Shorty</u>. It goes on to say **"Traditionally, the analysis of laws under ex post facto doctrine requires courts to examine statutes as a whole."** Therefore, **defendants' direct indifference** to both the **Wisconsin and United States Constitutions of Ex Post Facto laws protecting plaintiff's rights were indeed a violation of law**.

**WISCONSIN DEPARTMENT OF CORRECTIONS** Sex Offender Registry website **"now"** list plaintiff with **"<u>two</u> registerable offenses"** (Exhibit **3a**). However, at one time, not long ago, plaintiff had only **"one" registerable offense listed on the registry** (See Exhibit **3d, 3f**). Plaintiff wrote letter after letter to defendants informing all of them that **he had only one offense on the registry** (See Exhibits **8a, 8d, 8f, 8h, 8j, 8l, 8m, 8n, 8o**), and how he should not be under the **"SBN two-strike"** law. That's when plaintiff discovered **the underhanded falsifying of the Wisconsin Sex Offender Registry by the defendants**. Up until an inform decision to request up-to-date records (Exhibit **2b**), plaintiff discovered then that case **no. J-5184 had been added to the registry illegally** (See Exhibit **3a**) with **<u>NO CONVICTION DATE</u>**. Defendants list **case no. J-5184 as a second offense (2-Strike) case**, illegally placed there by defendants, **circumventing** the requirements for an **SBN (Special Bulletin Notification)** on plaintiff. Some DOC Representatives even went so far as illegally place 3 sex offenses on plaintiff's record hindering plaintiff's liberty (See Exhibits **10a, 10b**) However, as explained numerous times in the past to the defendants, **case no. J-5184 <u>does</u> <u>not</u> meet the criteria within the timeframe, boundaries prescribed by s. 301.45 (1g), "cases on or after December 25, 1993". Case no. J-5184 had discharged** close to **7 years** prior to the sex offender registry law came into effect.

**DEFENDANTS WANT PLAINTIFF** to believe that **Wis. Stat. Sec. 301.46 (2m) (am)** **"stands separate"** from its foundation of law of **"WHO IS COVERED"** set forth in **Wis. Stat. Sec. 301.45 (1g)**, and has **"No Start Date"** (See Exhibits **8b, 8c, 8e**). **The Wisconsin Supreme**

Court has made this **very important point** clear in <u>State ex rel. Kaminski v. Schwartz</u> and <u>State v. Bollig</u> where **the high Court of Wisconsin** ruled "Wis. <u>Stat. Sec. 301.46 grants access to the sex offender registration information provided under Wis. Stat. Sec. 301.45</u>." This concurs with the decision in **NOFFKE v. BAKKE,** the **Wisconsin Supreme Court** established "The purpose of statutory interpretation **is to determine what the statute means** so that it may be **given its full, proper, and intended effect**". "A statutes purpose of scope may be readily apparent from…**its relationship to surrounding or closely- related statutes-** that is, from its context or **the structure of the statute as a coherent whole**." <u>State ex rel. Kalal v. Circuit Court for Dane County,</u> orders "Therefore, **statutory language** is interpreted in the context it is used; <u>not in isolation</u>, but <u>as part of a whole</u> **in relationship to the language surrounding or closely- related statutes**; and **reasonably to avoid absurd or unreasonable results**". Such, as in this matter, where defendants are in fact <u>"isolating" Wis. Stat. Sec. 301.46 (2m)(am) "separately from" Wis. Stat. Sec. 301.45</u> to cover their wrong in violating plaintiff's Constitutional rights. **Wis. Stat. Sec. 301.45 has a "<u>Start Date</u>" of "on or after December 25, 1993",** but, **Wis. Stat. Sec. 301.46 (2m) (am) who by law follows the mandates of Wis. Stat. Sec. 301.45,** does not? That would be saying **Wis. Stat. Sec. 301.45 (1g), "WHO IS COVERED",** cases "**on or after December 25, 1993**" is meaningless under its subsection of **301.46(2m) (am)**. As noted by the Court, **Wis. Stat. Sec. 301.46** or any of its **sub parts cannot be viewed as an entity substantive from the predicated mandates of legal boundaries of its preceding closely related and leading statute, Wis. Stat. Sec. 301.45** and its timeframe boundaries set forth in convicted cases **on or after December 25, 1993.** Therefore, **Wis. Stat. Sec 3.01.46(2m) (am)** is governed by the guidelines required in **Wis. Stat. Sec. 301.45** and has a "**START DATE**" of "**on or after December 25, 1993**".

      **DEFENDANT(S) LITSCHER, ET AL** also took it upon themselves to **circumvent a contract plea agreement between the plaintiff and the State of Wisconsin on case no. 96CF226,** so ordered by **the Circuit Court of Walworth County on January 7, 1997.** This was a blatant infringement on plaintiff's rights. **The defendants, under the color of law, in their individual and official capacity, <u>breached the contract plea agreement</u>** by placing **new restrictive sanctions** from newly created laws on plaintiff.

      **BREACH OF A PLEA AGREEMENT**; "The plea stage of a criminal prosecution and adjudicative element inherent in accepting a plea of guilt **must be attended by safeguards** to insure the defendant what is reasonably due in the circumstances." See **<u>Santabello v. New York</u>**. **In a plea agreement, "Waivers of constitutional rights not only must be knowing, intelligent acts done <u>with sufficient awareness of the relevant consequences</u>.**" The voluntariness of a defendant's plea can be determined only by considering **all the relevant circumstances** surrounding it" (See **<u>Brady v United States</u>**).

      **DUE PROCESS REQUIRES** that in **plaintiff's plea agreement, agreed upon and accepted by the Circuit Court in Walworth County, January 7, 1997, <u>required that contract stand</u>.** A notification to the plaintiff by the court, the state, or state appointed defending attorney of such **sanctions of restraint,** in this case **LIFETIME GPS,** was **never entered,** or **even mentioned into that contract**. Why? Because the possibilities of restraints due to **Wis. Stat. Sec. 301.46, SPECIAL BULLETIN NOTIFICATION** and **Wis. Stat. Sec. 301.48, LIFETIME GPS** were **NON- EXISTANT** at that time, nor were **these new laws** annexed to the relevant

**circumstances and likely consequences** of Wisconsin law for a third-degree sex offense in 1995-96 Wis. Stats (See Exhibit **5a, 5b**).

**WISCONSIN STAT. SEC. 971.08** represents **the statutory codification of the Constitutional mandate that a plea be made knowingly, voluntarily, and intelligently,** and **requires that a defendant be aware of legal consequence's before entering a plea of the potential punishment upon conviction.** "Courts are **Constitutionally required** to notify defendants of the 'direct consequences' of their pleas" See **Brady v. United States**; **State v. James** "**A direct consequence represents one that has a definite, and largely automatic effect on the range of the defendant's punishment.**" Also, see **State ex rel. Warren v. Schwartz**. Plaintiff Burke, in an agreed upon **contract plea agreement** with the state of Wisconsin, approved and accepted as so in a **Walworth County circuit court,** with a **registration BEGIN date of January 7, 1997** was **not subject to such "direct consequences",** as such consequences were not included in the contract. **Lifetime Registration** and **Lifetime GPS** were a non-factor because such direct consequences **did not exist** at plaintiff's initial sentencing date nor first time registration date.

**BY FALSIFYING THE RECORD** of the Wisconsin Sex Offender Registry, a breach of the plea agreement contract, **defendant(s) bogusly added Case No. J-5184,** a case which was **consummated and discharged April 15, 1987, 6 years, 8 months, and 10 days** (Exhibit **4a**) prior to the law coming into effect (Exhibit **1a**). By adding this outdated case to the registry, this allowed **defendant's misleading entry** to be used as a "**second strike**" against plaintiff, placing him in a category of **Lifetime of GPS restrictions**. Not only is such an act illegal having an undertone of criminal intent in **violating plaintiffs civil and constitutional rights**. This act is **also a direct breach of contract in plaintiff's original plea agreement** made between him and the State of Wisconsin back in **1997**. This "**breach**" violates both **the Wisconsin and United States Ex Post Facto Clause** requirements.

**IN GRADY v. NORTH CAROLINA,** the U.S. Supreme Court in a unanimous decision, holding:" [1]-Satellite-based monitoring of a recidivist sex offender constituted a search within the scope of **the Fourth Amendment**, since attaching a monitoring device to the offender involved physically intruding on the offender's body **without consent** for the purpose of obtaining information concerning the offender's movements; [2]-While the monitoring constituted a search, **the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intruded upon reasonable privacy expectations.**" It is well settled that **the Fourth Amendment's** protection extends beyond the sphere of criminal investigations. **The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the government, without regard to whether the government actor is investigating crime or performing another function. The Fourth Amendment** applies as well when the government acts in its capacity as an employer. This **recent High Court ruling** should hold precedent in prescribing and enforcing the mandates of law here in Wisconsin concerning restraints placed on a person, regardless of their past. In support, a recent lower Court ruling, **Belleau v. Wall** 2015, the Court ruled "[1]- Where defendant,… in the law **violated the Ex Post Facto Clause because its effects were so punitive that they negated the Legislative non- intent; [2]- Subjecting defendant to lifetime GPS tracking Under Wis. Stat. Sec. 301.48 violated the Fourth Amendment rights** because **forcing him to keep a GPS**

device attached to his leg for the rest of his life constituted a search** and a **substantial intrusion upon his reasonable expectation of privacy.**' However, in a ruling by a **higher Court, the 7th Circuit,** overturning that ruling, **Belleau v. Wall 2016,** that Court said, 'Defendant's challenge…because the electronic monitoring was **reasonable in the circumstances**…because the monitoring laws was for prevention purposes rather than punishment." Those circumstances in the **Belleau** case, he being a "**convicted sex offender under Chapter 980,** who at one time in his conviction(s) **all under the timeframe mandates of Wis. Stat. Sec. 301.45 application dates required 'on or after December 25, 1993'**, had been 'COMMITTED'", **circumstances** that **the Court deemed necessary for such restrictive monitoring on GPS. Wis. Stat. Sec. Ch. 980** provides for the involuntary commitment of "**certain individuals who are found to be sexually violent persons". Wis. Stat. Sec.980.01(7)** defines a "sexually violent person" who **has been convicted of a sexually violent offense and who is dangerous** because he or she suffers from a **mental disorder** that makes it substantially probable that person may engage in acts of sexual violence (see **State v. Carpenter**, 197 Wis. 2d 252; 541 N.W. 2d 105, 1995 Wis. LEXIS 122, and **Thielman v. Leean**, 282 F.3d 478;2002 U.S. App. LEXIS 3376). These circumstances, **having been committed**, unarguably, is the sole factor the **Courts used in determining such support in who qualifies to wear a lifetime GPS.** Unlike **Belleau, plaintiff Burke had no** cases involving children. Plaintiff has **never been "committed"** for a sex offense. In fact, at that time, **1995-96,** Wisconsin had laws pursuant to "**Sexually Violent Offenses under Chapter 980 (6) and (7) See Exhibit 5a), and Wis. Stat. Sec. 302.11 (1g) 3 (am) "Presumptuous Mandatory Release"** (See Exhibit 5b). Even then plaintiff **did not meet the requirements for a "violent offense"** subjecting him to **the Presumptuous Mandatory Release laws** or the **Wisconsin 980 Laws for commitment.** These Wisconsin Stats both call for **only 1st and 2nd degree sexual assaults.** In 1996-97, when plaintiff's 3rd degree offense took place in 1996, **1st and 2nd degree sex offenses only** (Exhibit 5a) **entitled automatic exposure to the 980 laws,** offenses that were violent in nature. The only case plaintiff had involving a sex offense that qualifies to be placed on the sex offender registry is **case no. 96CF226** a 3rd degree sexual assault out of Walworth County, **with a sentencing date of March 21, 1997, and a discharged date of October 14, 2003**(See Exhibits 11a, 11b, and 11c). Not only was plaintiff **not committed,** but even more so to be recognized is the fact that plaintiff did not meet the requirements at his sentencing to even be considered for "Special Circumstances" commitment. Therefore, plaintiff does not meet those criterion requirements for "**Special Circumstances**" warranting **Lifetime GPS monitoring** as the Courts stated in **Belleau**.

# CONCLUSION

**TAKING INTO ACCOUNT** the **deliberate indifference** of the different substantive violations of plaintiff's Constitutional rights placed on him by the defendants;

1) **Violated both the Wisconsin and United States Ex Post Facto Clause;** taking a **past consummated conviction, case no. J-5184, with a discharge date of April 15, 1987, illegally** placing it on the **Wisconsin Sex Offender Registry.** In the present case before this Honorable Court, **case no. J-5184, with a conviction date of September 21, 1979,** completed and **discharged April 15, 1987** (See Exhibit 4a), **does not meet** the requirements needed for **Act 440,**

the Sex Offender Registry. Wis. Stat. Sec. 301.45 effects <u>cases occurring only "on or after December 25, 1993</u> (Exhibit 1a). **Act 440** was enacted over **14 years after** plaintiff's sentencing and nearly **7 years after** plaintiff discharged from **case no J-5184**. The plaintiff, therefore, in this case (**J-5184**), was **not** convicted, adjudicated delinquent, **nor** was plaintiff in prison, **nor** was plaintiff on any kind of supervision for a sex offense **"on or after December 25, 1993"** as prescribed by **Wis. Stat. Sec. 301.45 (1g) "WHO IS COVERED".** The Constitution provides that no state shall pass **any ex post facto law (See Index). The ex post facto prohibition forbids** the Congress and the States, including its agencies such as the DOC, to enact any law that **imposes a punishment for an act which was not punishable at the time it was committed**; or **imposes additional punishment** to that then prescribed. The Supreme Court found that **"it was the effect**, not the form of the law that determined whether it was ex post facto. The critical question is whether **the law changed the legal consequences of acts completed before its effective date"** (See <u>Weaver v. Graham</u>). Relying on the **United States Supreme Court** ruling that **"the retro-active effects is impermissible if a statute would <u>impair the rights</u> the plaintiff possessed when he acted, <u>increased his liability for past conduct</u>,** or **<u>imposed new duties</u> with respect to <u>transactions already completed</u>"** (See <u>Landgraf</u> and <u>Lindsey</u>). **This Lifetime Registry** and **this Lifetime GPS** shows the defendants are interpreting the statute wrongly, **applying it retroactively with respect to plaintiff's convictions that constituted punishment**, indeed violated, disrupted, and impaired plaintiff's rights. **The Constitution forbids the application of any new punitive measure to a crime already consummated to the detriment or material disadvantage of the wrong doer** (See <u>Kring v. Missouri</u>). Therefore, **new punitive measures** placed on plaintiff for past sentences already consummated is in violation of Constitutional Rights.

   2)**THE DEFENDANTS, violated** plaintiff's sentencing of **January 7, 1997**, having **breached the original plea agreement contract** by adding to plaintiff's 1997 sentence, **applying new laws,** one after another, that were enacted year after year, involving sex offenses. The latest addition, enacted **January 1, 2008, Lifetime Registry,** and **having to wear a satellite-based monitoring tracking device permanently attached to his leg for the rest of his life**. The Supreme Court, however, has repeatedly rejected arguments that plea bargaining is unconstitutional. See, e.g., **Brady v. United States**. But it has held that **"a defendants' guilty pleas must be voluntary, and that defendant may only plead guilty if they <u>know the consequences of doing so</u>", <u>McCarthy v. United States</u>**. Courts treat plea bargains as **<u>legal binding contracts</u>** between prosecutors and defendants. If a defendant breaks a plea bargain, the prosecutor is no longer bound by his or her side of the deal. **If a prosecutor reneges on plea bargains, defendants may seek relief from the judge**. The judge might let them withdraw their guilty pleas, may force prosecutor to follow the plea bargain, or may apply some other remedy. Plaintiff is asking this Honorable Court **to ensure that 1997 contract plea agreement stand,** demanding defendants to adhere to the Circuit Courts original court order in the plea agreement on **case no 96CF226** as it was agreed upon back in 1997. In that plea agreement, there was no "collateral consequence" of plaintiff possibly facing such future restrictions or restraints. **Lifetime Registration** and **Lifetime GPS** collateral consequences were non-existence at that time. More importantly, plaintiff's past offenses did not meet the requirements of any such collateral consequences. In 1995-96 Wisconsin law (Exhibit 5a, 5b), **3rd <u>degree sex offenses did not fall under a violent offense like 1st and 2nd degree sex offenses.</u>** As noted in defendants Melby's letter (Exhibit **6a**) addressed to plaintiff, 3rd degree sex offenses were added to **Chapter 980** with **an**

effective date of **August 1, 2006**, many years after plaintiff's **conviction date of January 7, 1997**. Because of a **change in law**, adding 3rd degree to the possibilities of Chapter 980 (See Exhibit **6a**), does that give defendants the right to **change plaintiff's sentence** to fall under such new laws? To do so is clearly a **ex post facto violation of law. Both the Wisconsin and the United States Constitutions** forbid such actions by governmental employees. Plaintiff is now demanding defendants abide by the law, **removing the restrictive sanctions of the satellite-monitoring tracking devise**, in favor of **Plaintiff's Constitutional Rights**.

Our **United States Supreme Court** has already said that **"satellite-based monitoring of a sex offender constituted a search within the scope of the Fourth Amendment"** (See **Grady**). The same Court also "indicated that electronic monitoring of sex offenders is permitted **if reasonable**". That agrees with **Belleau v. Wall 2016,** where **the 7th Circuit** used the term **"reasonable special needs"** search, when it does not violate the Fourth amendment. Unlike **Belleau**, plaintiff has never been considered a pedophile nor has he ever had a charge with a case involving children. More importantly, unlike **Belleau**, plaintiff has **never been civilly committed** for a sex offense, nor has he ever been by law subject to such restraints. **"In 2006 Wisconsin, enacted Wis. Stat. Sec. 301.48, requiring that persons released from civil commitment for sexual offenses wear a GPS monitoring device 24 hours a day for the rest of their lives. This statute applies to any sex offender released from civil commitment on or after the first day of 2008"** (See **Belleau v. Wall, January 2016). Again**, plaintiff has never been convicted of or sentenced on a **violent** sex offense, nor was plaintiff ever civilly committed qualifying him for **Wis. Stat. Sec. 301.48,** "a civil commitment", the **"reasonableness"** needed for such restrictive sanction.

3)Violation of both Wisconsin and the United States Due Process Laws; where **defendants deprived plaintiff of life, liberty without due process of law. The Fourteenth Amendment of the United States Constitution** provides **"nor shall any State deprive any person of life, liberty, or property, without due process of law." Wisconsin Constitution Article I Sec. 1** provides, "All people are born equally free and independent, and **have certain inherent rights.**" Requiring a person to continuously wear a GPS tracking device is clearly an infringement of **one's personal liberty.** "**Freedom from physical restraint** has always been at the core of the liberty protected by the **Due Process Clause** from arbitrary governmental action" (See **Kansas v. Hendricks**, quoting **Foucha v. Louisiana**). Each defendant, **Litscher, Melby, Lohre, Wiersma, Knutson, Harper, Lukach, Larrabee, Vogt, and Reichmann** all played a major role in violating this, plaintiff's **inherent right**. After many letters and even some face-to-face conversations concerning this hardship, neither defendant allowed plaintiff the right to at least a hearing concerning plaintiff's ongoing complaints about violations of **24 hour restraints** being placed on him for life. **These Constitutional violations, illegally placing plaintiff in a category of an SBN, also placed plaintiff in a high-risk supervision** allowing more incarcerations. Twice plaintiff was incarcerated on matters unrelated to plaintiff's charge of forgery/uttering. In **August of 2012** plaintiff was on supervision for a **forgery/uttering (943.38(2)),** case no. **09CF347**. While serving supervision requirements for this forgery charge, **plaintiff was forced to endure high risk SBN and Lifetime GPS sex offender rules and regulations** instead. In **December of 2012** plaintiff was locked up for being on a senior citizen dating site. Per **supervisor Vogt** and **agent Reichmann, this was a violation of Wisconsin's Sex Offender rules.** However, as stated earlier in this complaint **in that revocation due process hearing, Administrative Judge Thomas H. Bround** told defendants **"He (plaintiff) is on supervision for forgery-uttering"**, not a sex offense. **Administrative Law Judge Bround reduced** the time of

re-incarceration from **18 months to 9 months** stating **"that was sufficient to punish"** (See Exhibit **14f, 14g**). With a **deliberate indifference to Judge Bround's ruling, defendants** continued to violate plaintiffs Constitutional Rights by locking him up a second time for a sex offense violation. **On March 31, 2014,** plaintiff was locked up a second time and **sent to a sex offender "Alternative to Revocation" (ATR) treatment, in a secure prison setting** to avoid a revocation incarceration, being sent back to prison. Unfortunately, **revocation did come, as violating a sex offender rule,** and **not** a violation of what I was on supervision for, a forgery charge, **case no. 093CF347** (See Exhibits **14h**).

# C.   JURISDICTION

**I am suing for a violation of federal law under 28 U.S.C. S.1331**

# D.   RELIEF WANTED

**Plaintiff is seeking relief from the violations of his Constitutional Rights.**

**Plaintiff is seeking <u>immediate</u> relief, the removal of the restrictive sanctions of Lifetime Registry** and **Lifetime GPS** placed on him illegally ten years ago by the hands of each defendant, **Litscher, Melby, Wiersma, Lohre, Knutson (Roberts), Harper, Lukach, Symdon, Vogt,** and **Reichmann, in both their individual and official capacities.**

**Plaintiff is seeking monetary relief in compensatory,** and **punitive damages.**
In **compensatory damages, plaintiff is seeking one hundred thousand dollars ($100,000)** from each defendant for the **harm and injuries plaintiff sustained due to defendants' deliberate indifference** to plaintiff's Constitutional Rights. **Harm and injuries sustained in loss of wages** from exemplary employment such as a Buffet Chef at the Grand Geneva Resort & Spa located in Lake Geneva Wisconsin. **Harm and injuries sustained in loss of property,** i.e., vehicles, clothing, furniture, and other household items caused by unjust lock-up detainments due to the illegal change in his sentence. **Harm and injuries from neglecting plaintiffs known physical medical diagnosis** (Exhibit **17**) which led to immediate surgery upon plaintiff's release. Defendants was aware of this need for medical treatment because the GPS Monitoring bracelet had to be temporarily removed for the MRI to be done. The excruciating pain plaintiff had to endure waiting for proper treatment. **Harm and injuries due to the mental anguish suffered** from the embarrassing Special Bulletin Notification, placing plaintiff's name and photo in the local newspapers, and television. This hinders plaintiff's ability to find housing and further employment, causing a high amount of emotional distress and financial strain.
In **punitive damages,** plaintiff is seeking $70,000 from each defendant for the harm and injuries sustained from the conduct violating plaintiff's rights and defendants be stopped from doing this to any other.

_December 16, 2016_    _Reginald D Buck Sr._